UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHEILA A. BOYETTE and TIFFANY
JIMINEZ, individually and on behalf of all
others similarly situated,

               Plaintiffs,

     v.

MONTEFIORE MEDICAL CENTER, THE
BOARD OF TRUSTEES OF MONTEFIORE
MEDICAL CENTER, THE TDA PLAN
COMMITTEE, DR. MICHAEL STOCKER
AND JOHN DOES 1-30,

               Defendants.

Case No.:  1:22-cv-05280-JGK

---

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

**McDermott Will & Emery LLP**
Peter John Sacripanti
John J. Calandra
Lisa Gerson
One Vanderbilt Avenue
New York, New York 10017
T: 212 547 5400
F: 212-547-5444

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT.........................................................................................................................2

I.   THE SAC FAILS TO ESTABLISH PLAINTIFFS' CONSTITUTIONAL STANDING ..2

II. THE SAC FAILS THE SECOND CIRCUIT'S PLEADING STANDARD FOR
     IMPRUDENCE IN MONITORING RECORDKEEPING FEES ......................................5

III. THE SAC'S CALCULATION ERRORS UNDERMINE PLAINTIFFS' CLAIMS..........7

IV. PLAINTIFFS CONTINUE TO IMPROPERLY RELY ON HINDSIGHT FOR THEIR
     EXPENSE RATIO CLAIMS..............................................................................................8

V. PLAINTIFFS' SHARE CLASS CLAIM IS DISTINGUISHABLE FROM TYPICAL
     SHARE CLASS CLAIMS...................................................................................................9

CONCLUSION.....................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beach v. JP Morgan Chase Bank*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) .........................................................................4

*Davis v. Washington Univ.*,
960 F.3d 478 (8th Cir. 2020) .................................................................................................9

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020).........................................................................10

*Ferguson v. Ruane Cunniff & Goldfarb*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019).....................................................................6, 9

*Forman v. TriHealth, Inc.*,
40 F.4th 443 (6th Cir. 2022) ..................................................................................................9

*Forte v. U.S. Pension Comm.*,
2016 WL 5922653 (S.D.N.Y. Sept. 30, 2016)....................................................................3, 5

*Gonzalez v. Northwell Health, Inc.*,
2022 WL 4639673 (E.D.N.Y. Sept. 30, 2022) .......................................................................8

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
2022 WL 973581 (W.D. Pa. Mar. 31, 2022) ..........................................................................7

*Kong v. Trader Joe's Co.*,
2022 WL 1125667 (9th Cir. 2022) .........................................................................................9

*Krutchen v. Ricoh USA, Inc.*,
2023 WL 3026705 (E.D. Pa. Apr. 20, 2023) ..........................................................................6

*Leber v. Citigroup 401(k) Plan Investment Comm.*,
323 F.R.D. 145 (S.D.N.Y. 2017) ...........................................................................................4

*Moitoso v. FMR LLC*,
451 F. Supp. 3d 189 (D. Mass. 2020) .....................................................................................7

*Moreno v. Deutsche Bank*,
2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016)......................................................................10

*Patterson v. Morgan Stanley*,
2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...............................................................2, 3, 8

*Probst v. Eli Lilly & Co.*,
   2023 WL 1782611 (S.D. Ind. Feb. 3, 2023) .................................................................6

*Sacerdote v. New York Univ.*,
   2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017), *rev'd* 9 F.4th 95 (2d Cir. 2021) ......................9

*Sandoval v. Exela Enter. Solutions, Inc.*,
   No. 3:17-cv-1573 (D. Conn. Mar. 30, 2020) (ECF No. 41-2) .................................5

*Singh v. Deloitte*,
   2023 WL 186679 (S.D.N.Y. Jan. 13, 2023) ................................................ *passim*

*Smith v. VCA, Inc.*,
   2022 WL 2037116 (C.D. Cal. Apr. 6, 2022) ........................................................7

*Sweda v. Univ. of Penn.*,
   923 F.3d 320 (3d Cir. 2019).........................................................................10

*Taveras v. UBS AG*,
   612 F. App'x 27 (2d Cir. 2015) .................................................................2, 4

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).................................................................................4

*In re UBS ERISA Litig.*,
   2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd* 612 F. App'x 27 (2d Cir. 2015).............3

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
   325 F. App'x 31 (2d Cir. 2009) ...................................................................5

### INTRODUCTION[1]

Plaintiffs' opposition doubles down on Plaintiffs' heavy reliance on improper expert opinion and citation to inapposite and out-of-circuit case law.  The opposition contains no response to Defendants' key arguments and law.  Indeed, it completely ignores this Court's opinion in *Singh v. Deloitte*.

On the issue of standing, for example, Plaintiffs do not allege they invested in any of the Challenged Funds, and they fail to address Defendants' argument that Constitutional standing requires them to plead what they, individually, paid in recordkeeping fees.  Plaintiffs' reliance on case law concerning class standing, rather than Article III standing, misses the point and cannot save their claims. Not only are the doctrines distinguishable, but Plaintiffs' cited cases have been repeatedly distinguished by other courts in this district.

On the merits, Plaintiffs fair no better.  They ignore the Second Circuit's mandate that the reasonableness of recordkeeping fees must be viewed against the services *actually received*.  Instead, Plaintiffs largely rehash the Second Amended Complaint's ("SAC") quotation of expert opinion, and do so without addressing Southern District case law explaining why such opinion is improper in a complaint.  Plaintiffs' response regarding the allegedly imprudent funds is similarly lacking, as Plaintiffs are unable to overcome their reliance on hindsight and fail to acknowledge or respond to the crucial distinction between this and other cases—*i.e.*, an established benefit to Plan participants of the higher-cost funds selected.

Finally, Plaintiffs fail to respond to Defendants' arguments that they should be denied leave to replead.  Accordingly, the SAC should be dismissed with prejudice.

---

[1] All emphasis has been added, and all citations and internal quotations have been omitted.

## ARGUMENT

**I.     THE SAC FAILS TO ESTABLISH PLAINTIFFS' CONSTITUTIONAL STANDING**

Plaintiffs do not dispute that ERISA plaintiffs must satisfy Article III standing by showing an injury in fact that is concrete and particularized.  (Mot. at 10-11.)  In the context of defined contribution plans—such as the Plan here—Article III standing is absent where there is no injury to the "*individual account* of any of the named plaintiffs."  *Singh v. Deloitte*, 2023 WL 186679, at *4 (S.D.N.Y. Jan. 13, 2023); *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) ("Failure to allege *individualized harm* goes directly to constitutional standing and is fatal to [plaintiff's] Amended Complaint."); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *4-5 (S.D.N.Y. Oct. 7, 2019) ("The mere fact that Plaintiffs purport to bring this action in a derivative capacity does not absolve them of the need to establish a constitutional injury-in-fact[.]").

Relying on this fundamental rule, Defendants demonstrated that Plaintiffs lack standing because they (1) did not invest in any of the eight allegedly imprudent funds (the "Challenged Funds"), and (2) fail to plead that they, personally, paid an excessive recordkeeping fee.  (Mot. at 12-14.)

Unable to refute these facts—and ignoring all of Defendants' cited case law, including the *Singh* decision—Plaintiffs instead rely on a footnote from *Long Island Head Start v. Economic Opportunity Commission* for the proposition that they need not plead individual injury with respect to each Plan investment.  (Opp'n at 9.)  This argument fails.

First, Plaintiffs fail to plead an individual injury with respect to *any* Plan investment, let alone *each* Plan investment.[2]

Second, courts in this Circuit have distinguished *Head Start* based on the structure of the plan at issue—a welfare benefit plan.  Unlike defined contribution plans—where participants have individual accounts and direct their own investment decisions—"*Head Start* involved a plan in which the fiduciary managed the entirety of the plan's assets on behalf of the participants." *Patterson*, 2019 WL 4934834, at *5.  Therefore, "each participant [in the Head Start plan] would necessarily be harmed by any losses sustained by the plan[.]"  *Id.*  The same cannot be said for participants in a defined contribution plan because "[l]osses incurred by funds in which Plaintiffs did not invest cannot have impaired the value of Plaintiffs' individual accounts."  *Id.*; *Forte v. U.S. Pension Comm.*, 2016 WL 5922653, at *7 (S.D.N.Y. Sept. 30, 2016) (distinguishing *Head Start* because "a plaintiff must still show an individualized harm in order to establish standing."); *In re UBS ERISA Litig.*, 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29, 2014) (same), *aff'd* 612 F. App'x 27 (2d Cir. 2015).

Third, the two cases Plaintiffs cite as adopting *Head Start* are procedurally distinguishable—both were *class* (not constitutional) standing decisions—and, regardless, they confirm that "even named plaintiffs who represent a class must allege and show that they

---

[2] Incongruously, Plaintiffs argue that Defendants selected "several imprudent funds, *including ones invested in by Plaintiffs*."  (Opp'n at 9 (citing SAC ¶ 71).)  Defendants presume this was error.  The cited paragraph 71 has nothing to do with the funds in which Plaintiffs invested, and the SAC otherwise establishes that Plaintiffs were *not* invested in the Challenged Funds.  *Compare* SAC ¶¶ 20-21, *with id.* ¶¶ 120, 133.

*personally have been injured*[.]"  *Beach v. JP Morgan Chase Bank*, 2019 WL 2428631, at *3 (S.D.N.Y. June 11, 2019); *Leber v. Citigroup 401(k) Plan Investment Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) ("In the context of class actions, a named plaintiff *who has constitutional standing* to raise claims based on *his own injuries may* also have 'class standing' to assert 'other claims[.]'"); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205-06 (2021) (distinguishing constitutional standing from statutory causes of action).

Here, Plaintiffs have yet to establish their own injury-in-fact.  Nor can they.  Because Plaintiffs were not invested in the Challenged Funds, they cannot establish injury to their individual accounts as a result of Defendants' selection of those funds. *Taveras*, 612 F. App'x at 29; *Singh*, 2023 WL 186679, at *4.

As to recordkeeping fees, Plaintiffs' opposition continues to ignore that the Plan's asset-based (as opposed to per-participant) fee structure requires Plaintiffs to plead that they, personally, paid an excessive fee.  Put differently, reference to per-participant averages does not demonstrate that *Plaintiffs* suffered an injury-in-fact. (Mot. at 4.)  To the extent Plaintiffs are arguing the Plan's recordkeeping fee percentage—pled (incorrectly) as 0.127%—is itself unreasonable regardless of how much each Plaintiff paid, that argument is circular—*i.e.*, according to Plaintiffs, 0.127% is unreasonable because it results in a per-participant fee higher than $25-30, but Plaintiffs still fail to plead it resulted in a higher-than-$25-fee *for them*.  Thus, Plaintiffs fail to establish injury-in-fact on their recordkeeping claim as well, and the SAC should be dismissed in full for lack of standing. *TransUnion*, 141 S. Ct. at 2208 ("[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]").

## II.   THE SAC FAILS THE SECOND CIRCUIT'S PLEADING STANDARD FOR IMPRUDENCE IN MONITORING RECORDKEEPING FEES

The Second Circuit mandates that allegedly excessive recordkeeping fees must be assessed "relative to the services rendered." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009); *Singh*, 2023 WL 186679, at *5 ("Well-reasoned decisions in this Circuit have found that plaintiffs must plausibly allege that the administrative fees were excessive relative to the services rendered."). The SAC does not and cannot plead that the comparator plans received the same services. (SAC ¶ 105; Mot. at 16-18 & n.16 (comparing Form 5500s to demonstrate differences in services).)[3]

Instead, Plaintiffs rely on Mr. Vitagliano's conclusory opinion that "[t]he services chosen by a large plan do not affect the amount charged by recordkeepers for such basic and fungible services." (Opp'n at 12.) To the extent his opinion suggests that the services rendered can be ignored in making fee comparisons, it is contrary to settled law in this district and must be rejected for that reason alone. Mr. Vitagliano's expert opinions also remain inappropriate for consideration on a motion to dismiss for the reasons explained in Defendants' opening brief. (Mot. at 21-23.) Plaintiffs fail to address those arguments, instead offering the singular statement that the issue is "moot" because Mr. Vitagliano "merely confirms the factual assertions made in the SAC." (Opp'n

---

[3] Plaintiffs' objection to Defendants' request for judicial notice is meritless. (Opp'n at 3 n.5.) Courts have found the content of Form 5500s, Plan documents, and recordkeeping agreements integral to ERISA claims and, therefore, properly considered on a motion to dismiss. *See, e.g.*, *Singh*, 2023 WL 186679, at *5 n.3 (considering Form 5500s); *Forte*, 2016 WL 5922653, at *2 n.2 (considering Plan documents); *Sandoval v. Exela Enter. Solutions, Inc.*, No. 3:17-cv-1573 (D. Conn. Mar. 30, 2020) (ECF No. 41-2), at 4 n.4 (considering recordkeeper service agreement).

at 22.)  Plaintiffs' contention is demonstrably false.  Rather than Mr. Vitagliano confirming factual assertions in the SAC, the SAC repeatedly and inappropriately quotes and cites Mr. Vitagliano's opinions.  (*See, e.g.*, SAC ¶¶ 12, 62, 65-73, 89-90, 102-03.)

Even if the Court were to consider Mr. Vitagliano's opinion, which it should not, the opinion is contradicted by the SAC itself.  That is, the SAC shows that plans of allegedly comparable size paid their recordkeeper between $25-30, reflecting that there *actually is price variation* even among "large plans."  *See Probst v. Eli Lilly & Co.*, 2023 WL 1782611, at *11 (S.D. Ind. Feb. 3, 2023) (dismissing complaint that alleged "all mega plans receive nearly identical recordkeeping services and [] any difference in services was immaterial to the prices of those services." (citing *Singh*, 2023 WL 186679)); *Krutchen v. Ricoh USA, Inc.*, 2023 WL 3026705, at *2 (E.D. Pa. Apr. 20, 2023) (dismissing complaint and rejecting argument that services are fungible (citing NEPC study finding "service levels drive meaningful differentiation in price")).

Next, Plaintiffs assert that Defendants failed to remain informed about recordkeeping fee trends, including by conducting an RFP.  Identical allegations did not save the complaint from dismissal in *Singh.  Compare* 2023 WL 186679, at *2 (dismissing claim despite allegation that there was "little to suggest" defendants conducted an RFP at "reasonable intervals"), *with* SAC ¶¶ 91, 97.  Moreover, documents properly considered on this motion contradict the allegation that Defendants did not monitor recordkeeping fees and services.  (Mot. at 18 (demonstrating Defendants' negotiation of fees and services); *Ferguson v. Ruane Cunniff & Goldfarb*, 2019 WL 4466714, at *9 (S.D.N.Y. Sept. 18, 2019) (where "documents properly considered on a motion to dismiss contradict the pleadings, the Court need not accept those pleadings as true[.]").)

Finally, Plaintiffs' out-of-circuit case law cannot save the SAC, as those cases either confirm the necessity to plead that fees are excessive "relative to the services received," are

factually distinguishable, or both.[4]  The Seventh Circuit's decision in *Hughes v. Northwestern University* falls into both categories.  That is, *Hughes* acknowledges the rule recognized in the Second, Sixth and Ninth Circuits—that fees must not be "excessive with respect to the services received."  63 F.4th 615, 625, 632 (7th Cir. 2023).  But *Hughes* distinguished the pleadings in those other cases, and *Hughes* is similarly distinguishable from the pleadings here.  For example, the plaintiffs in *Hughes* amplified the generic allegations that recordkeeping services are "commoditized", "fungible", and differentiated "based on price", with actual examples of other plans "that successfully reduced recordkeeping fees by soliciting competitive bids, consolidating to a single recordkeeper, and negotiating rebates."  *Id.* at 632.  The SAC contains no such detail.  In fact, Plaintiffs admit the SAC comparators were selected based on a single factor – participant size.  (Opp'n at 12.)

## III.   THE SAC'S CALCULATION ERRORS UNDERMINE PLAINTIFFS' CLAIMS

Defendants previously identified at least four significant mathematical errors made in the SAC regarding recordkeeping fees.  (Mot. at 7-10 & n.9-11.)  Accordingly, Plaintiffs' contention that "the only 'fee' amount Defendants argue Plaintiffs got wrong are the fees associated with the

---

[4] *Johnson v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 973581, at *6 (W.D. Pa. Mar. 31, 2022) (analyzing fees "relative to services received"); *Smith v. VCA, Inc.*, 2022 WL 2037116, at *4 (C.D. Cal. Apr. 6, 2022) (unlike the SAC, alleging examples of "other plans offering an *identical package of services* but at cheaper fee costs."); *Moitoso v. FMR LLC*, 451 F. Supp. 3d 189, 213 (D. Mass. 2020) (unlike Defendants, "Fidelity *does not dispute* that the Plan Fiduciaries declined to monitor recordkeeping expenses").

Plan's recordkeeper" (Opp'n at 15), is perplexing.  But even if true, an admitted error in the Plan's recordkeeping fees is hardly "inconsequential" when Plaintiffs' claims are premised on the alleged imprudence of that fee.

Plaintiffs' citation to *Pension Benefit Guaranty Corp. v. St. Vincent* is also perplexing, since the opinion affirmed dismissal.  712 F.3d 705, 709 (2d Cir. 2013) ("*PBGC*").  Nonetheless, Plaintiffs rely on *PBGC*, and two out-of-circuit cases, for the proposition that their errors are forgivable because ERISA plaintiffs "generally lack the inside information necessary to make out their claims[.]"  (Opp'n at 15.)   But the errors Defendants identified—which, for example, significantly impacted both the Plan's alleged recordkeeping fee and that of the allegedly lowest-cost comparator (Sanofi)—were based on publicly available Form 5500s or documents sent to Plaintiffs. (Mot. at 7-10.)  Plaintiffs' vague contention that their errors were due to "Defendants' opaque and contradictory reporting" is undermined by the numbers printed in black and white in those documents.  In short, Plaintiffs have no answer for their multiple, significant errors.

## IV.   PLAINTIFFS CONTINUE TO IMPROPERLY RELY ON HINDSIGHT FOR THEIR EXPENSE RATIO CLAIMS

Even if Plaintiffs had standing with respect to the allegedly expensive and underperforming funds—which they do not—their claims fail on the face of the SAC.  Plaintiffs focus on Defendants' use of the phrase "mere underperformance" in a section header to argue that Defendants misunderstand the claim.  Not so.  While Defendants used that shorthand phrase to describe the SAC's deficiencies, case law to which Defendants cite in that section—which Plaintiffs did not address—establishes that allegations of underperformance, *even coupled with allegedly cheaper alternatives*, are still insufficient where the allegations rely on hindsight, as they do here.  *Patterson*, 2019 WL 4934834, at *2 (dismissing complaint alleging funds "charged inordinate fees and underperformed throughout the class period"); *see also Gonzalez v. Northwell*

*Health, Inc.*, 2022 WL 4639673, at *7 (E.D.N.Y. Sept. 30, 2022) (dismissing claims where plaintiffs alleged funds "trailed their respective benchmark … on three- and five-year rolling, trailing average bases" and "a prudent fiduciary would have replaced these funds with lower-cost alternatives"). Plaintiffs' attempt to walk-back their reliance on hindsight is non-sensical; the SAC plainly relies on performance data looking backwards from the time of the pleading. (SAC ¶ 134.)

## V.   PLAINTIFFS' SHARE CLASS CLAIM IS DISTINGUISHABLE FROM TYPICAL SHARE CLASS CLAIMS

Plaintiffs' response on their Share Class Claim fails to address the crucial distinguishing factor identified in Defendants' opening brief: the Plan's Form 5500s conclusively establish, rather than merely suggest, the benefit Plan participants receive from investing in the higher-cost share class—*i.e.*, that revenue sharing proceeds are credited to the investing participants' accounts. (Mot. at 20-21.) Thus, the Court need not and should not credit the SAC's conclusory allegations that different share classes are "identical" and "the Plan did not receive any additional services or benefits based on the use of more expensive share classes[.]" *See Ferguson*, 2019 WL 4466714, at *9. Without these allegations, the SAC fails to plausibly allege Defendants' imprudence in selecting the Share Class Funds.

The cases Plaintiffs cite are distinguishable because no similar fact, properly considered on a motion to dismiss, unequivocally established the benefit of the higher-cost share class. *See Sacerdote v. New York Univ.*, 2017 WL 3701482, at *11 (S.D.N.Y. Aug. 25, 2017) (dismissing claim based on hypothetical benefit of higher-cost share class), *rev'd* 9 F.4th 95, 108 (2d Cir. 2021) (rejecting hypothetical benefit rationale); *Forman v. TriHealth, Inc.*, 40 F.4th 443, 452 (6th Cir. 2022) (possible explanation for higher-cost share class only suggested by *amicus*); *Kong v. Trader Joe's Co.*, 2022 WL 1125667, at *1 (9th Cir. 2022) (defendant showed "only what could occur in theory—not what occurred in fact."); *Davis v. Washington Univ.*, 960 F.3d 478, 483 (8th Cir. 2020)

(rationale for choosing higher-cost share class argued, not established); *Sweda v. Univ. of Penn.*, 923 F.3d 320, 331 (3d Cir. 2019) (no explanation for higher-cost share class discussed); *Moreno v. Deutsche Bank*, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016) (same).[5]

Finally, Defendants' argument is not that Plaintiffs must "rule out every possible lawful explanation" (Opp'n at 21), but rather that the Supreme Court's *Twombly* precedent permits dismissal where an "obvious alternative explanation" for Defendants' conduct exists.  (Mot. at 20-21.)  Here that "obvious alternative explanation" is the established benefit to Plan participants invested in the Share Class Funds.

## <u>CONCLUSION</u>

Accordingly, the SAC should be dismissed with prejudice.

---

[5] *Davis v. Salesforce.com* is distinguishable because documents considered there established only the *fact* of revenue sharing, not, as here, the *benefit* of revenue sharing.  2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020); *compare* Calandra Decl. Ex. 1 (ECF No. 38-1) ("Fidelity credits the amount of such revenue sharing … back to the Plan, to then be allocated to such participant accounts[.]").

Dated:  June 5, 2023                    Respectfully submitted,
        New York, New York

                                        By: <u>John J. Calandra</u>
                                              Peter John Sacripanti
                                              John J. Calandra
                                              Lisa Gerson
                                              McDermott Will & Emery LLP
                                              One Vanderbilt Avenue
                                              New York, New York 10017
                                              T: 212-547-5400
                                              F: 212-547-5444

                                              *Attorney for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the Reply Memorandum of Law in Further Support of Defendants'

Motion to Dismiss the Second Amended Complaint complies with the type-volume limitation

pursuant to § II.D of the Individual Practices of Judge John G. Koeltl.  The brief contains 2,797

words of Times New Roman 12-point proportional type.

/s/ John J. Calandra