```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────
SHEILA A. BOYETTE and TIFFANY
JIMINEZ, individually and on behalf
of all others similarly situated,           22-cv-5280 (JGK)

                    Plaintiffs,             MEMORANDUM OPINION AND
                                            ORDER
          - against -

MONTEFIORE MEDICAL CENTER, THE BOARD
OF TRUSTEES OF MONTEFIORE MEDICAL
CENTER, THE TDA PLAN COMMITTEE, DR.
MICHAEL STOCKER, and JOHN DOES 1-30,

                    Defendants.
─────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiffs, Sheila A. Boyette and Tiffany Jiminez, brought this purported class action on behalf of themselves and all others similarly situated, against the defendants, Montefiore Medical Center ("Montefiore"), the Board of Trustees of Montefiore Medical Center (the "Board"), the TDA Plan Committee (the "Committee"), Dr. Michael Stocker, and John Does 1-30 (collectively, "the defendants"). The plaintiffs alleged that the defendants violated their fiduciary duty of prudence in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 et seq.

In a Memorandum Opinion and Order dated November 13, 2023, this Court granted the defendants' motion to dismiss the Second Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6). See <u>Boyette v. Montefiore Medical Center</u>, 22-cv-5280, 2023 WL 7612391 (S.D.N.Y. Nov. 13, 2023) (the "First Opinion"). The plaintiffs now move pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file a Third Amended Complaint. See ECF No. 55-2 ("Third Amended Complaint"). For the reasons that follow, the plaintiffs' motion for leave to amend is **denied**.

### I.

The Third Amended Complaint repeats the bulk of the allegations from the Second Amended Complaint, which is described at length in the First Opinion. See <u>Boyette</u>, 2023 WL 7612391, at *1-2. Familiarity with the First Opinion is assumed. Unless otherwise noted, the following allegations are taken from the Second and Third Amended Complaints. Where necessary, the summary below indicates which allegations are new additions contained only in the Third Amended Complaint.[1]

### A.

The plaintiffs are former employees of Montefiore who are participants in the Montefiore Medical Center 403(b) Plan (the "Plan"). Second Am. Compl. ("SAC") ¶¶ 20-21; Third Am. Compl. ("TAC") ¶¶ 16-17. The Plan covers substantially all eligible

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

employees of Montefiore. SAC ¶¶ 43-44; TAC ¶¶ 39-40. From 2017 to 2022, the Plan had over 22,000 participants and over $2 billion in assets under management. TAC ¶¶ 7, 98.

As discussed in the First Opinion, the Plan is a defined contribution plan. SAC ¶ 43; TAC ¶ 6. 29 U.S.C. § 1002(34) defines a defined contribution plan as a

> pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

Participants can contribute to their Plan accounts in several different ways, and Montefiore matches participant contributions up to a certain percentage. SAC ¶¶ 45-46; TAC ¶¶ 42-43.

Montefiore, acting through the Board, appointed the Committee to, among other things, ensure that the investments available to Plan participants were appropriate and that the Plan paid a fair price for recordkeeping services. SAC ¶ 31; TAC ¶ 27. The Committee is the named fiduciary under the Plan with the responsibility to select and monitor the investment alternatives available for participant-directed investment. TAC ¶ 28.

**B.**

The plaintiff Sheila A. Boyette ("Boyette") invested in the Fidelity Freedom 2030 Fund, which was mapped to the Principle Life Time 2030 Inst Fund when the Plan discontinued the Fidelity

Freedom Funds. SAC ¶ 20; TAC ¶ 16. The plaintiff Tiffany Jiminez ("Jiminez") invested in the BlackRock LifePath Index 2045 Fund and the MetLife Blended Fund. SAC ¶ 21; TAC ¶ 17.

In both the SAC and TAC, the plaintiffs use the term "recordkeeping" as a catchall term for the suite of administrative services typically provided to a defined contribution plan by the plan's "recordkeeper." See SAC ¶ 64; TAC ¶ 60. Fidelity Investments ("Fidelity") and Principal Financial Group ("Principal") serve as the Plan's recordkeepers. TAC ¶ 85. Recordkeeping expenses "can either be paid directly from plan assets, or indirectly by the plan's investments in a practice known as revenue sharing." SAC ¶ 74; TAC ¶ 72. The cost of providing recordkeeping services "often depends on the number of participants in a plan[,]" TAC ¶ 67, and thus, "[p]lans with large numbers of participants can take advantage of economies of scale by negotiating a lower per-participant recordkeeping fee." Id. While the "vast majority of plans" charge recordkeeping expenses on a per-participant basis, id. 69, the Plan employs an asset-based fee schedule whereby recordkeeping fees are charged as a percentage of each participant's account balance. Id. ¶¶ 16, 17, 69.

In both the SAC and TAC, the plaintiffs allege that the recordkeeping costs for the Plan were higher than those of comparable peer plans. See TAC ¶¶ 16, 16 n.3, 17. The plaintiffs

4

assert that the Plan had substantial bargaining power to negotiate recordkeeping and administrative costs, TAC ¶¶ 8-9, due its size and the number of participants, id. ¶ 7. The plaintiffs assert that

> [T]he Plan, with over 22,000 participants and over $3.4 billion dollars in assets in 2020, should have been able to negotiate a recordkeeping cost anywhere in the mid $20 range per participant from the beginning of the Class Period to the Present. Smaller plans were paying an outlier amount of $35 to $36 meaning the Plan, with its significant number of participants, should have been paying much less than $35 to $36 per participant for [recordkeeping] fees.

Id. ¶ 104.

The TAC derives a fixed "per-participant" recordkeeping fee for participants in the Plan, that the plaintiffs calculate ranges from $34 per participant to $63 per participant during the class period. See TAC ¶¶ 16, 95. The TAC does not allege what percentage of participants paid more than a "reasonable" amount for recordkeeping costs. See, e.g., id. ¶¶ 99-100. Under the asset-based fee structure, The TAC asserts that Boyette paid a "minimal" recordkeeping fee "because Plan fees are based on her account balance which was minimal[.]" Id. ¶ 16. Jiminez complains that she paid $31 per year in recordkeeping fees. Id. ¶ 17.

### c.

In both the SAC and TAC, the plaintiffs allege that the defendants breached their fiduciary duties imposed by ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). See TAC ¶¶ 10, 110-117; SAC ¶¶

5

14, 140-147. Specifically, the plaintiffs allege that part of a fiduciary's duty to remain informed about overall trends in the recordkeeping fee marketplace includes conducting a Request for Proposal ("RFP") process at "reasonable intervals, and immediately if the plan's recordkeeping expenses have grown significantly or appear high in relation to the general marketplace." TAC ¶ 75; SAC ¶ 78. The plaintiffs allege that, because the Plan "paid astronomical amounts for recordkeeping during the Class Period, there is little to suggest that Defendants conducted an RFP at reasonable intervals . . . to determine whether the Plan could obtain better recordkeeping and administrative fee pricing from other service providers[.]" TAC ¶ 88; SAC ¶ 91.

The plaintiffs further allege that, pursuant to 29 U.S.C §§ 1109(a) and 1132(a)(2), the defendants are liable for failing to adequately monitor other fiduciaries, and to restore to the Plan all losses caused by their failure to monitor adequately the Committee. See TAC ¶¶ 116, 124; SAC ¶¶ 146, 154. The plaintiffs allege that the defendants' failure to monitor and evaluate the performance of the fiduciaries, failure to monitor the process, and failure to remove the fiduciaries caused the plaintiffs to suffer "millions of dollars of losses." TAC ¶¶ 122-23; SAC ¶ 152-53.

The plaintiffs allege that they have standing to bring this action because they participated in the Plan and were injured by the defendants' unlawful conduct. TAC ¶ 18; SAC ¶ 22.

**D.**

The plaintiffs filed their original complaint against the defendants on June 22, 2022. ECF No. 1. An Amended Complaint was filed on November 14, 2022. ECF No. 21. The Second Amended Complaint was filed March 10, 2023. ECF No. 30. On April 21, 2023, the defendants filed a motion to dismiss the Second Amended Complaint. ECF No. 35. The defendants moved to dismiss for lack of subject matter jurisdiction pursuant to Federal Civil Rule of Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Id.

In the First Opinion, this Court granted the defendants' motion to dismiss in full. See 2023 WL 7612391, at *1, 8. Recognizing that the Court had recently dismissed a substantially similar case alleging breach of the fiduciary duty of prudence in violation of ERISA, the Court concluded that many of the same reasons warranted dismissal in this case. See id. at *3 (citing Singh v. Deloitte LLP, 650 F. Supp. 3d 259 (S.D.N.Y. 2023)). The Court found that the plaintiffs had failed to plead an injury-in-fact with respect to their claim alleging excessive recordkeeping

fees and with respect to their claims challenging the funds that charged excessive expensive ratios. Id. at *4-5.

Although lack of standing was sufficient to dismiss the plaintiffs' complaint on jurisdictional grounds, the Court next found that the plaintiffs had failed to state a claim pursuant to Rule 12(b)(6). The Court concluded that the plaintiffs "must allege more than that the Plan's recordkeeping fees were higher than those of other plans[,]" id. at *6, to state a claim for breach of fiduciary duty under ERISA. Instead, the plaintiffs must plausibly allege that "the administrative fees were excessive relative to the services rendered." Id. (citing Ferguson v. Ruane Cunniff & Goldfarb Inc., No. 17-cv-6685, 2019 WL 4466714, at *8 (S.D.N.Y. Sept. 18, 2019) and Gonzalez v. Northwell Health, Inc., 632 F. Supp. 3d 148, 167 (E.D.N.Y. 2022)).

Finally, the Court addressed the plaintiffs' claim concerning the defendants' failure to monitor, concluding that this claim was derivative of the plaintiffs' claims for a breach of fiduciary duty, and that the claim should be dismissed for the same reasons. Id. at *7 (citing Coulter v. Morgan Stanley & Co., 753 F.3d 361, 368 (2d. Cir. 2014)).

On December 14, 2023, the plaintiffs filed a motion for leave to file a Third Amended Complaint. ECF No. 55.

8

**II.**

Federal Rule of Civil Procedure 15(a) provides that courts should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, such leave need not be granted "[w]here a proposed amendment would be futile[.]" Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021).

The futility inquiry on a motion for leave to amend is "comparable to that required upon a [Rule 12(b)(6)] motion to dismiss[.]" Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 604 (2d Cir. 2005). In evaluating whether granting leave to amend would be futile, a court must consider both the proposed amendments and the original complaint, "accepting as true all non-conclusory factual allegations therein, and drawing all reasonable inferences in the plaintiff's favor." Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 225 (2d Cir. 2017); see also Tribune Co., 10 F.4th at 175. The Court should not dismiss the amended complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows

9

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III.

In the plaintiffs' Third Amended Complaint, the plaintiffs allege that the Plan was charging excessive recordkeeping and administrative fees and that the defendants breached the fiduciary duty of prudence under ERISA by not obtaining lower fees. Granting leave to amend would be futile because substantively the same defects present in the Second Amended Complaint continue to exist in the proposed Third Amended Complaint, except for the Court's conclusion that both plaintiffs lack standing. For the reasons discussed below, the allegations contained in the Third Amended are sufficient to plead an injury-in-fact with respect to Jiminez's claims.

In any event, because the Third Amended Complaint fails to assert a claim of relief that is plausible on its face, see Twombly, 550 U.S. at 570, the plaintiffs' Third Amended Complaint fails on the merits.

### A.

The plaintiffs attempt to cure their lack of standing by pleading that Boyette paid a "minimal" fee because her account balance was "minimal," id. ¶ 16, and that Jiminez paid unreasonable recordkeeping fees of $31 per year, see TAC ¶ 17.

10

**i.**

To establish Article III standing, a party must show that (1) the party has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and conduct complained of; and (3) it is likely that a favorable decision in the case will redress the injury. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

As relevant here, "[t]o qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003). Injury is "concrete and particularized" if it "affect[s] the plaintiff in a personal and individual way," Lujan, 504 U.S. at 560 n.1; accord Baur, 352 F.3d at 632, and injury is "actual or imminent" if the plaintiff "has sustained or is immediately in danger of sustaining some direct injury," City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).

In this case, because Boyette failed to allege any injury in fact, let alone one that is "concrete and particularized," see Lujan, 504 U.S. at 560, Boyette lacks standing with respect to Boyette's claim of excessive recordkeeping fees.

11

As for Jiminez, however, the claim that Jiminez was charged an unreasonable fee of $31 per year satisfies the jurisdictional requirement at this stage of litigation. See, e.g., Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim."); Jacobs v. Verizon Comm., Inc., 2020 WL 5796165, at *6 (S.D.N.Y. 2020) (concluding that the plaintiff had sufficiently established standing to seek relief under ERISA, and recognizing that "[i]t is enough that plaintiff has pleaded facts sufficient to demonstrate that its economic position has been materially impaired by reason of defendant's misconduct.").

The defendants argue that the Court can wholly disregard Jiminez's claim that the fee of $31 per year was unreasonable because it is the same fee paid by participants in the General Dynamics Corporation 401(k) Plan that the TAC offers as a "peer" comparator for purposes of establishing its alleged range of reasonable fees. See ECF No. 60 at 14-15; TAC ¶¶ 17, 102. But the question of whether Jiminez's factual allegations survive a motion to dismiss are distinct from whether Jiminez has adequately pleaded allegations sufficient to establish standing. The cases cited by the defendants are correct that "general allegations that are contradicted by more specific allegations in the complaint"

12

cannot survive a motion to dismiss. See ECF No. 60 at 15 (citing Lindberg v. Dow Jones & Co., Inc., No. 20-cv-8231, 2022 WL 799664, at *2 (S.D.N.Y. Mar. 16, 2022); Lamda Sols. Corp v. HSBC Bank USA, N.A., 574 F. Supp. 3d 205, 216-17 (S.D.N.Y. 2021); DPWN Holdings (USA), Inc. v. United Air Lines, Inc., 747 F.3d 145, 151-52 (2d Cir. 2014); Pierce v. Fordham Univ., Inc., No. 15-cv-4589, 2016 WL 3093994, at 2 n.1 (S.D.N.Y. June 1, 2016), aff'd, 692 F. App'x 644 (2d Cir. 2017)). But the district courts in these cases dismissed the respective complaints for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6), not for lack of jurisdiction.

Accordingly, because Jiminez asserted a concrete and particularized injury with respect to the recordkeeping fees, see TAC ¶ 17, Jiminez has cured the jurisdictional defect regarding Jiminez's claim in the prior complaint. See Boyette, 2023 WL 7612391, at *4.

### ii.

The plaintiffs next make an alternative standing argument that they have asserted a "derivative claim." The plaintiffs allege that Boyette and Jiminez have standing because "the excessive Plan [recordkeeping fee] was paid for using Plan assets," and the plaintiffs' alleged "claim for an undivided interest in the Plan assets were diminished when the Plan paid more for fees than it should have." TAC ¶¶ 16-17. But this

13

argument is unavailing. If the named plaintiffs did not pay excessive fees, but the Plan as a whole paid excessive fees, then the plaintiffs could not participate in the distribution of these excessive fees. Only the participants who paid the excessive fees could benefit. This why other courts in this district have denied standing in the defined-contribution context when a plaintiff has not personally invested in the particular underperforming funds at issue. See, e.g., In re UBS Erisa Litig., No. 08-cv-6696, 2014 WL 4812387, at *6 (S.D.N.Y. Sept. 29, 2014) ("Plaintiff can only demonstrate a constitutionally sufficient injury by pointing to her individual account's specific losses during the class period."), aff'd sub nom. Taveras v. UBS AG, 612 F. App'x 27 (2d Cir. 2015) (summary order) (emphasis in original); Patterson v. Morgan Stanley, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019); in re Omnicrom ERISA Litig., No. 20-cv-4141, 2021 WL 3292487, at *1, 10 (S.D.N.Y. Aug. 2, 2021). The plaintiffs appear to recognize this, because they have stricken the allegations relating to investments in individual funds in which the plaintiffs did not participate in keeping with this Court's First Opinion that held that the plaintiffs lacked standing to complain about inadequate performance or fees in individual funds in which they did not invest. Compare SAC ¶¶ 114-138, with ECF No. TAC, ECF No. 55-1 (redline striking prior paragraphs); see also Pls.' Reply at 3 n.1

14

(conceding the same). Thus, the plaintiffs cannot assert standing based on any "derivative claim."

## B.

The Court dismissed the Second Amended Complaint because it failed to plausibly allege that the Plan's recordkeeping fees "were excessive relative to the services rendered." Boyette, 2023 WL 7612391, at *6. The plaintiffs now identify eight allegedly comparable plans in order to "show[] that the Plan was paying higher [recordkeeping fees] than its peers for the same services." TAC ¶ 102. But the plaintiffs have failed to cure the deficiencies that warranted dismissal of the SAC.

The plaintiffs' TAC does not plead with specificity what services provided by the recordkeepers for the eight comparator plans were the same as those provided by the Plan's recordkeepers. See Boyette, 2023 WL 7612391, at *6; see also Singh, 650 F. Supp. 3d at 267. Perhaps in recognition of this deficiency, the plaintiffs eliminated any reliance on the recordkeeping codes of competitor services, compare SAC ¶ 105 n. 15, with TAC ¶ 102 n. 19 (conceding "coding itself can be subjective, with no agreed upon methodology in the industry, so reliance on coding along is not accurate."), and offer no alternative plan that has a comparable number of participants or assets under management as the Plan, which had at least 22,000 participants and over $2 billion dollars in assets under management during the class period. See TAC ¶ 98.

15

For this reason, the TAC still lacks the requisite "apples to apples" comparison required "to indicate plausibly imprudence on the part of the defendants." See Boyette, 2023 WL 7612391, at *6. As the Court in the First Opinion made clear, the plaintiffs' allegation "that all recordkeepers offer the same range of services," see TAC ¶ 51, "does not mean that all plans employing a particular recordkeeper received an identical subset of services within that range." Boyette, 2023 WL 7612391, at *6.

The plaintiffs have also dramatically reduced their allegation of the actual recordkeeping costs paid, from $136.51 to $172.70, see SAC ¶ 98, to the average cost per participant of $43 to $41, see TAC ¶ 95, including Jiminez's fee of $31 per year alleged in the TAC, see TAC ¶ 17. In the SAC and TAC, the plaintiffs allege that the "reasonable" range of per-participant recordkeeping fees was between $25 and $30. See SAC ¶ 103; TAC ¶¶ 99-100. That would not make the fees charged by the Plan unreasonably excessive, particularly because the services provided, as indicated in the plan documents, included all of the optional services. See TAC ¶¶ 62-64.

Finally, regarding the plaintiffs' amended claim that the defendants failed to monitor the Plan Committee, see TAC ¶¶ 118-24, this claim is derivative of Count I, that the defendants breached the fiduciary duty of prudence, see TAC ¶¶ 110-117, and the plaintiffs' amendment is futile for the reasons discussed

16

above. See Boyette, 2023 WL 7612391, at *7 (dismissing failure to monitor claim based on insufficiently pleaded claim for breach of fiduciary duty); see also Singh, 2023 WL 4530650, at *6 (denying leave to amend derivative failure to monitor claims based on futility of underlying claims).

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the plaintiffs' motion to amend the complaint is **denied**. The Clerk is respectfully directed to close ECF No. 55.

**SO ORDERED.**

**Dated:**    **New York, New York**
          **April 5, 2024**

                                          **John G. Koeltl**
                                    **United States District Judge**